# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    )
           )
        v.         )     Criminal No. 07-393-01
           )
ROBERT ERIC JAMES,     )
           )
        Defendant.    )
           )

## MEMORANDUM OPINION

CONTI, Chief District Judge

On February 11, 2015, this court held a final supervised release violation hearing concerning Robert Eric James ("defendant"). (ECF No. 110.)  At defendant's request, and following a colloquy before the court on February 9, 2015, defendant proceeded pro se at that hearing, with former court-appointed counsel, W. Penn Hackney, acting as stand-by counsel. (2/9/15 Minute Entry.)  The court found that defendant violated the conditions of his supervised release by possessing marijuana with the intent to distribute (a Grade A violation) and by using marijuana (a Grade C violation). (ECF No. 112.)  Defendant was sentenced to serve a total of 24 months' imprisonment as a result of these violations of the conditions of his supervised release. (Id.)

Following imposition of the revocation sentence, defendant filed a motion to dismiss the Grade A supervised release violation. (ECF No. 113-14.)  The government responded, and defendant filed a supplement in support of his motion. (ECF Nos. 115, 117.)  The court held a hearing on defendant's motion on April 1, 2015. (ECF No. 119.)  For the reasons set forth below, defendant's motion will be denied.

## I.  Facts

### A.  Conduct Forming the Basis for the Alleged Supervised Release Violations

On November 6, 2014, a probation officer petitioned this court for issuance of a warrant for defendant, to be lodged as a detainer at the Allegheny County Jail, without bond. (ECF No. 98 (hereinafter, the "Petition").)  The Petition alleged that defendant violated two conditions of his supervised release: (1) defendant shall not commit another Federal, state or local crime; and (2) defendant shall refrain from any unlawful use of a controlled substance. (ECF No. 98 at 2.)

The second violation was first brought to the court's attention in September 2014, after defendant tested positive for marijuana in August and September 2014. (ECF No. 96.)  The probation officer did not request that the court take any action at that time, and instead indicated that defendant's frequency of drug testing and supervision would be increased. (Id.)  Defendant again tested positive for marijuana in October 2014, and the probation officer listed all three positive drug tests as forming the basis of the second violation in the November 6, 2014 Petition. (ECF No. 98.)

The Petition also charged defendant with violating the terms and conditions of his supervised release by committing another federal, state or local crime.  He was arrested following the Pittsburgh Police Department's execution of a search warrant at defendant's residence early in the morning on the same day that the Petition was filed. (ECF No. 98.) Defendant lived at this residence with his cousin and her young daughter.  Defendant was present at the time of the search, and was transported to a Pittsburgh police station after he admitted to a detective conducting the search that "everything" was his. (ECF No. 120 at 39-41.)  In the "nature of noncompliance" portion of the Petition with respect to this violation, the probation

officer stated that "Pittsburgh Police will be charg[ing] the defendant with Possession with Intent to Deliver – Heroin, and Possession of Heroin.  Additional charges will be forthcoming." (ECF No. 98.)  The probation officer noted that defendant was being held in lockup at the police station at the time, and had not yet been processed by the Allegheny County Jail. (Id.)

The Federal Public Defender's Office was appointed to represent defendant, and defendant appeared, with counsel, at an initial appearance and preliminary hearing before two magistrate judges of this court in January 2015. (ECF Nos. 101-02, 104.)  At the January 21, 2015 preliminary hearing, a document referred to as "Arrest Report" was admitted into evidence as Exhibit 2. (ECF No. 104.)  This document details the execution of the search warrant at defendant's residence on November 6, 2014, and includes a two-page arrest/summons report, a one-page offense/incident report, and a four-page investigative report (hereinafter, collectively, "Police Report").  Defendant acknowledged receipt of this document, through his court-appointed counsel at the time, on January 20, 2015, the day before the preliminary hearing. (ECF No. 103 (Item #3 – "Police Report 14-220966 (7 pp)")); see also, Ex. B to 4/1/15 hearing.  Defendant also acknowledged receipt, through his counsel, of the signed search warrant, with the four-page probable cause affidavit sworn by Pittsburgh Police Detective William Churilla (hereinafter, collectively, "Search Warrant"). (ECF No. 105); see also, Ex. C to 4/1/15 hearing.

The Search Warrant summarized Detective Churilla's investigation of defendant, including his receipt of information from the United States Attorney's Office, and the probation officer about defendant's history of marijuana abuse, positive tests for marijuana use while on supervised release, and past convictions involving the possession of marijuana.  The Search Warrant detailed a trash pull conducted by Detective Churilla and Detective Joseph Lewis at defendant's residence, 1704 Bedford Avenue in Pittsburgh, Pennsylvania, on November 4, 2014,

which revealed loose marijuana, marijuana blunts, a heat sealed bag labeled "Cali Gold" containing marijuana residue, baggies, and baggie corners, which were known to the affiant to indicate drug trafficking. The Search Warrant states that, based upon this information and evidence, Detective Churilla believed that evidence would be located in defendant's residence "that will indicate that he is both using and selling marijuana." Search Warrant at 4. There is no reference in the Search Warrant to defendant's suspected use or possession of heroin, although substantial quantities of that drug, and associated heroin trafficking paraphernalia were actually recovered during the search, as set forth below.

The Police Report indicates, on pages one, two, three, and four of the investigative report, that a marijuana blunt and three open heat seal bags with marijuana residue were found in the living room of the residence, along with indicia addressed to defendant, and other individuals. The Search Warrant indicates that the probation officer informed Detective Churilla that defendant lived in the living room of the residence. The Police Report indicates that other items, including heroin, a digital scale, and unused white stamp bags were recovered from other parts of the residence, including the second floor bathroom, an entry-way closet, the master bedroom, and the top of the refrigerator in the kitchen.

**B. The Final Supervised Release Violation Hearing**

On February 11, 2015, this court held a final supervised release violation hearing. (ECF No. 110). Defendant admitted to using marijuana, the second violation alleged in the Petition. (ECF No. 120 at 3, 93.) The court found this conduct to be a Grade C violation. (Id. at 3, 75.)

Defendant denied that he committed the first violation alleged in the Petition, i.e., committing another crime, based upon his November 6, 2014 arrest following the search of his residence on that same date. (Id. at 3-4.) The government, therefore, was required to offer proof of its allegations with respect to this alleged violation. The court found that there was sufficient evidence to find that defendant possessed marijuana with the intent to distribute, but insufficient evidence to find that defendant possessed heroin with the intent to distribute. (Id. at 69.)

The evidence at the final supervised release violation hearing revealed that a partially-smoked marijuana blunt and a duffle bag containing three heat seal bags containing marijuana residue were found on the floor of the living room. (Id. at 33, 37, 54-55.) Defendant did not dispute that he resided in the living room of the shared residence, and the probation officer testified that his prior home visits during defendant's period of supervised release confirmed the same. (Id. at 23, 25-26.) Detective Churilla testified that the heat seal bags are known to him to be of the type used in the distribution of marijuana, and that each could have held a pound of the drug, with a total street value of thousands of dollars. (Id. at 30-31, 55-57, 59-61.) Detective Churilla testified that a heat seal bag, with the label "Cali Gold," was found during the trash pull that he conducted at defendant's residence prior to securing the search warrant that was executed on November 6, 2014. (Id.at 28-30.) According to Detective Churilla,

the presence of heat seal bags indicates drug trafficking, rather than personal drug use. (Id. at 30-31, 45, 55-57, 59-61.)

Detective Churilla summarized the various other items that were seized during execution of the Search Warrant, including: 30 bundles and 40 loose white stamp bags of heroin from a second floor bathroom; a bag of powder inside a GNC bottle on top of the refrigerator in the kitchen; a partially-smoked marijuana blunt from the master bedroom on the second floor; unused white stamp bags from a closet in the hallway between the kitchen and living room on the first floor; a digital scale from the second floor; cellular telephones from the second floor and the living room; and indicia for defendant, under his alias Corneil Jones, and for his cousin. (Id. at 35-39.)

Detective Churilla testified that defendant was found in the hallway between the kitchen and living room on the first floor of the residence when the officers entered the residence to execute the Search Warrant, and remained in the kitchen area while the police searched the residence, and recovered the various items referenced above. (Id. at 33-34, 37-38.)  According to Detective Churilla, after the search was conducted and the evidence was recovered, defendant made a spontaneous utterance that "everything" or "all the sh*t" was his. (Id. at 40; Police Report at 5.)  Defendant agreed to return to the police station to make a formal statement to that effect, and was transported to the station by a uniformed officer for that purpose. (ECF No. 120 at 41-42.)  When Detective Churilla met with defendant at the police station to execute the paperwork, defendant again orally expressed that the "stuff" was his, but became belligerent and directed profanity at Detective Churilla and refused to make a written or taped statement attesting to the fact that the drugs and drug paraphernalia seized at his residence that day

belonged to him. (Id.)  Detective Churilla ended his communication with defendant at that point. (Id. at 42.)

Based upon this evidence, the court found that the government proved, by a preponderance of the evidence, that defendant possessed marijuana with the intent to distribute. (Id. at 69-70.)  The court found this conduct to be a Grade A violation because, given defendant's drug-related prior convictions, possession with the intent to distribute would be punishable by a term of imprisonment exceeding one year under Pennsylvania law. (Id. 70-75); U.S.S.G. § 7B1.1(a)(1).  Although the government alleged that defendant was likewise engaged in the distribution of heroin, the court found that there was insufficient evidence to find that defendant was engaged in heroin distribution because there were others living in the residence, and none of the heroin-related evidence was found in the living room, where defendant lived. (ECF No. 120 at 69-70.)

Defendant's applicable guidelines range of imprisonment for the more serious Grade A violation, at a criminal history category of V, was 30 to 37 months, which range was reduced to 24 months because defendant's original counts of conviction were class C felonies, making the maximum period of incarceration allowed by statute 24 months. (Id. at 75-76.); 18 U.S.C. § 3583(e)(3); U.S.S.G. § 7B1.4.  The court sentenced defendant to concurrently serve a 24-month term of imprisonment for the Grade A violation, and an 8-month term of imprisonment for the Grade C violation. (ECF No. 112.)  No period of supervised release would follow. (Id.)

Upon imposing sentence, defendant became agitated, voiced a desire to leave the courtroom, objected to the ruling, unexpectedly stood up from his chair at counsel's table, and began to move toward the U.S. Marshals in an apparent effort to leave the courtroom. (ECF No. 120 at 97.)  The U.S. Marshals immediately removed defendant from the courtroom.  Because

defendant was removed before the court could advise him of his appeal rights, that portion of the colloquy was printed out and handed to stand-by counsel, who was instructed by the court to deliver the same to defendant before he was transported from the federal courthouse that day. (Id. at 98.)

### C. **Motion to Dismiss the Grade A Violation**

At 3:04 p.m. on the fourteenth day following sentencing, stand-by counsel filed a motion to dismiss the Grade A violation, arguing that defendant did not receive written notice that possession of marijuana with the intent to deliver was being asserted as an alleged violation of the terms of his supervised release. (ECF No. 113, citing Fed. R. Crim. P. 32.1(b)(2)); Fed. R. Crim. P. 35(c). Counsel asked that defendant's sentence be reduced to 8 months imprisonment because the notice defendant received was insufficient to allow him to prepare to defend against the charge that he possessed marijuana with the intent to distribute or to "cross-examine Detective Churilla on the marijuana evidence effectively." (Id. at 4.) Stand-by counsel filed an errata to the motion, at 5:00 p.m. on that same day, clarifying that defendant was still proceeding pro se, and that the motion was filed by stand-by counsel on his behalf. (ECF No. 114.)

The government responded to the motion, and the court set a hearing on the matter for April 1, 2015. (ECF Nos. 115-16.) Thereafter, stand-by counsel filed a supplement to the motion to dismiss, attaching an affidavit executed by defendant attesting to the facts that he directed stand-by counsel to file the motion to dismiss and that he was unprepared to defend against the accusation that he possessed marijuana with the intent to distribute at the February 11, 2015 supervised release violation hearing. (ECF No. 117.)

### D. **Defendant's Prior Judgments**

On June 17, 2009, defendant was sentenced to serve two concurrent 69-month terms of imprisonment after pleading guilty to two counts of being a convicted felon in possession of a firearm, to be followed by 3 years of supervised release. (ECF No. 65 at 2, 3.) Defendant was released from federal prison on September 18, 2012, and was arrested on November 11, 2012, for possession with intent to deliver a controlled substance. (ECF No. 70.) After the trial on these state charges was delayed, defendant was brought into federal custody, and sentenced to 21-months imprisonment for the various supervised release violations arising out of the conduct leading to his arrest on November 11, 2012. (ECF No. 94 at 2.) During those prior supervised release violation proceedings, the government noted that defendant was subject to increased penalties, under both federal and state law, because he had multiple prior drug convictions. (ECF No. 74 at 2 (referring to two prior possession convictions and two prior possession with the intent to deliver convictions).)

Defendant was most recently released from federal prison on May 20, 2014, at which time he commenced a 15-month period of supervised release, the first 6 months of which were to be served on home detention. (ECF No. 94 at 3; ECF No. 99.) Defendant was arrested on November 6, 2014, which was during his period of home detention.

## II.    Legal Authority

### A.  Motion to Correct Sentence

Congress "eliminated the common-law practice of allowing motions for reconsideration" with respect to sentencing, through its passage of the Sentencing Reform Act of 1984. United States v. Gonzalez-Rodriguez, 777 F.3d 37, 41 (1st Cir. 2015) (citing 18 U.S.C. § 3582(c)); see United States v. D'Amario, 593 F. App'x 97, 98 n.1 (3d Cir. 2014) (recognizing that although motions for reconsideration may be filed in criminal cases, as a matter of common-law, "Congress long ago abrogated this common-law practice in the sentencing context"); see United States v. Banks, No. 04-176, 2015 WL 926534 (W.D. Pa. Mar. 4, 2015) (applying this legal principle to defendant's challenge to a revocation sentence imposed by this court).

Pursuant to 18 U.S.C. § 3582(c), a term of imprisonment, once imposed by the district court, can only be modified upon motion of the Director of the Bureau of Prisons or "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c); United States v. Griffin, 524 F.3d 71, 83 (1st Cir. 2008).  Where a criminal defendant asks the district court to correct or reduce a sentence after judgment is entered, but does not identify the statutory basis for that relief, the court is "authorized to proceed only within the constraints of Rule 35." United States v. Townsend, 762 F.3d 641, 647 (7th Cir. 2014); see United States v. Ortiz, 741 F.3d 288, 292 n.2 (1st Cir. 2014) (noting that a district court's authority to grant relief to a defendant claiming a sentencing error "stems solely from [Rule 35(a)]'s positive law, not from any inherent power").

Under Rule 35, a district court may modify a sentence under only two circumstances: (1) in order to correct a sentence that resulted from arithmetical, technical, or other clear error, if the correction is made within 14 days after sentencing; and (2) upon the

government's motion based upon a defendant's substantial assistance in investigating or

prosecuting another person. FED. R. CRIM. P. 35.  According to an Advisory Committee's Note to

Rule 35:

> The authority to correct a sentence under [Rule 35(a)] is intended to be
> very narrow and to extend only to those cases in which an obvious
> error or mistake has occurred in the sentence, that is, errors which
> would almost certainly result in a remand of the case to the trial court
> for further action under Rule 35(a). The subdivision is not intended to
> afford the court the opportunity to reconsider the application or
> interpretation of the sentencing guidelines or for the court simply to
> change its mind about the appropriateness of the sentence. Nor should
> it be used to reopen issues previously resolved at the sentencing
> hearing through the exercise of the court's discretion with regard to the
> application of the sentencing guidelines. Furthermore, the Committee
> did not intend that the rule relax any requirement that the parties state
> all objections to a sentence at or before the sentencing hearing.

FED. R. CRIM. P. 35, advisory committee's note (1991); Amendments to Federal Rules of

Criminal Procedure, 134 F.R.D. 495, 520 (1991); 3 Charles Alan Wright, Andrew D. Leipold,

Peter J. Henning, and Sarah N. Welling, Fed. Prac. & Proc. Crim. § 613 (4th ed. 2014).

The fourteen-day time limitation in Rule 35 is jurisdictional, and cannot be

extended by the district court. United States v. Higgs, 504 F.3d 456, 458-59, 464 (3d Cir. 2007);

FED. R. CRIM. P. 45(b)(2).  Rule 35 requires that the court dispose of any motion to correct a

sentence that resulted from arithmetical, technical, or other clear error within fourteen days of

orally announcing the sentence. Higgs, 504 F.3d at 458-59.  The Rule does not establish a

deadline for the defendant to file a motion; it establishes a deadline for the district court to act on

any motion to correct a sentence due to arithmetical, technical, or other clear error. Id.  When the

time for filing a motion to correct sentence pursuant to Rule 35(a) was increased from seven days

to fourteen days in 2009, the advisory committee addressed the interaction between the deadline

set forth in Rule 35 and the deadline for filing a notice of appeal by stating that the "[e]xtension

of the period in this fashion will cause no jurisdictional problems if an appeal has been filed, because Federal Rule of Appellate Procedure 4(b)(5) expressly provides that the filing of a notice of appeal does not divest the district court of jurisdiction to correct a sentence under Rule 35(a)." FED. R. CRIM. P. 35, advisory committee's note (2009). After the fourteen-day period set forth in Rule 35(a) expires, a defendant may seek modification of a sentence through direct appeal or pursuant to 28 U.S.C. § 2255. United States v. Rinaldi, 581 F. App'x 109, 111 (3d Cir. 2014).

### B. Revocation of Supervised Release

#### 1. In General

Federal district courts have the authority to include terms of supervised release when sentencing criminal defendants. 18 U.S.C. § 3583(a). Section 3583(e)(3) permits a court to revoke a term of supervised release and require a defendant "to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release," if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Revocation is mandatory if the court concludes that a defendant, while on supervised release, possessed a controlled substance. 18 U.S.C. § 3583(g)(1); U.S.S.G. § 7B1.4 cmt. n.5.

Defendants do not enjoy "the full panoply of rights" afforded to them at trial during revocation proceedings. Morrissey v. Brewer, 408 U.S. 471, 483 (1972). That diminished protection is justified by the government's "overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his [supervised release]." Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973); Morrissey, 408 U.S. at 483; FED. R. CRIM. P. 32.1.

## 2.  Classification of Supervised Release Violations

When a defendant violates the conditions of his supervised release, the district court determines whether the defendant's conduct is a Grade A, Grade B, or Grade C violation, with Grade A being the most serious violation. U.S.S.G. § 7B1.4.  If the court concludes that a defendant is to be incarcerated for his violation, the court determines the appropriate term of imprisonment, taking into account the guidelines, the defendant's criminal history category at the time of the original sentencing, and the factors set forth in 18 U.S.C. § 3553. 18 U.S.C. § 3583(e); U.S.S.G. § 7B1.4.

A Grade A violation is "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years...." U.S.S.G. § 7B1.1(a)(1).  "Controlled substance offense" means offenses prohibiting "the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. §§ 4B1.2(b); § 7B1.1 cmt. n.3.  A Grade B violation is for "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(a)(2).  A Grade C violation is for conduct that constitutes either "a federal, state, or local offense punishable by a term of imprisonment of one year or less," or "a violation of any other condition of supervision." U.S.S.G. § 7B1.1(a)(3).

Where a defendant violates the condition that he not commit another Federal, state or local crime, the guidelines explicitly direct that "[a] violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct. The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct." U.S.S.G. § 7B1.1, cmt. n.1.

### 3. **Notice**

Revocation proceedings are subject to "minimum requirements of due process" which include written notice of the claimed violations. Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973) (citing Morrissey, 408 U.S. at 489). These due process requirements have been incorporated into Rule 32.1 of the Federal Rules of Criminal Procedure, which governs the revocation of supervised release. "For notice to be effective" under Rule 32.1, "it need only assure that the defendant understands the nature of the alleged violation." United States v. Bullock, 576 F. App'x 120, 122 (3d Cir.) cert. denied, 135 S. Ct. 296 (2014) (citing United States v. Sistrunk, 612 F.3d 988, 992 (8th Cir. 2010)). In other words, a defendant's due process right to pre-hearing notice is satisfied where he has written notice of the conduct that resulted in his alleged violation of the conditions of supervised release so that he can prepare a defense. United States v. Jackson, 510 F. App'x 149, 154 (3d Cir.) cert. denied, 133 S. Ct. 1477 (2013); United States v. Gordon, 961 F.2d 426, 429–30 (3d Cir. 1992). There is no requirement that a defendant be notified of the grade violation with which he is being charged, and the district court always retains the power to determine the proper grade to assign to a defendant's conduct. United States v. Seiber, 516 F. App'x 208, 213 (3d Cir. 2013) (noting that the Federal Sentencing Guidelines

are advisory and that the policy statements set forth in Part B of Chapter 7 speak to "the court's" authority to revoke supervised release); Jackson, 510 F. App'x at 154-55.

The Court of Appeals for the Third Circuit has repeatedly found that a positive drug test is circumstantial evidence that the defendant was in possession of the drug for which he tested positive. Bullock, 576 F. App'x at 122 (citing United States v. Blackston, 940 F.2d 877, 886 (3d Cir. 1991)); Seiber, 516 F. App'x at 211-12; Jackson, 510 F. App'x at 151-52; United States v. Bungar, 478 F.3d 540, 544 (3d Cir. 2007). Notice that the defendant tested positive for a particular drug is deemed adequate notice that the defendant may be found to have possessed that substance, even if the violation petition does not formally charge him with possession, or even use, of the controlled substance, or set forth the corresponding grade violation associated with possession of the drug. Bullock, 576 F. App'x at 122 (citing United States v. Gordon, 961 F.2d 426, 429-30 (3d Cir. 1992)); United States v. Littlejohn, 508 F. App'x 123, 127 (3d Cir. 2013); Bungar, 478 F.3d at 542.

The government need not file a notice, pursuant to 21 U.S.C. § 851, in order for a court to consider defendant's prior convictions in determining the appropriate grade to assign to defendant's conduct during supervised release violation proceedings. Bullock, 576 F. App'x at 123-24; Seiber, 516 F. App'x at 214-15; Jackson, 510 F. App'x at 155-56; Littlejohn, 508 F. App'x at 129-30.

## III.    Discussion

Although defendant moves to dismiss the Grade A violation, his motion is only cognizable if it is construed as one seeking relief pursuant to Federal Rule of Criminal Procedure 35 on the ground that the court committed clear error by sentencing him based upon the Grade A supervised release violation of possessing marijuana with the intent to deliver without sufficient written notice. (ECF Nos. 114 ¶ 7 and 116 at 6-7.)  Defendant contends that it was "improper for the court to make a finding on that uncharged violation," and that he should only have been sentenced to 8 months imprisonment for the Grade C violation. (ECF No. 114 ¶ 5.)  Defendant argues that his failure to receive written notice that he was being accused of engaging in marijuana trafficking caused unfair surprise and undue prejudice because he was not prepared to defend against such a charge. (Id.)  Defendant stated that had he been aware that marijuana trafficking could form the basis of a supervised release violation, he would have asked Detective Churilla at the final supervised release violation hearing if he (defendant) was charged in state court with possession with intent to distribute marijuana, and if the answer was no, defendant would have asked why not.  Defendant's claims are not sustainable, under either the law or the facts, and his motion must be denied.

As an initial matter, even if defendant's motion is construed as one brought pursuant to Rule 35 to correct his sentence due to clear error, the motion must be denied because it was not timely filed.  The motion was first filed by counsel on defendant's behalf at 3:04 p.m. on the fourteenth day following imposition of sentence. (ECF No. 113.)  At the time, defendant was proceeding pro se, making filings made by counsel "hybrid filings" which this court need not accept. United States v. Young, No. 06-710-02, 2008 WL 163045 (E.D. Pa. 2008) (citing United States v. Essig, 10 F.3d 968, 973 (3rd Cir. 1993)).  The docket was not corrected to reflect that the filing was being made pro se, but with stand-by counsel's assistance, until 5:00 p.m. on the

same date. (ECF No. 114.)  Neither filing provided the court with sufficient time to dispose of the motion within the time allotted by Rule 35(a).  The fourteen-day deadline cannot be extended by this court, and is jurisdictional.  United States v. Higgs, 504 F.3d 456, 458-59, 464 (3d Cir. 2007); FED. R. CRIM. P. 45(b)(2).  Defendant's recourse is through either direct appeal or a § 2255 motion.  Rinaldi, 581 F. App'x at 111.  This court must, therefore, deny defendant's motion on this basis alone.

Even if the court were to consider the merits of defendant's motion, however, defendant would not be entitled to relief.  Under applicable law, defendant was entitled to receive notice of the conduct that resulted in the alleged violations of the conditions of supervised release so that he could understand the nature of his violations and prepare his defense.  Bullock, 576 F. App'x at 122; Jackson, 510 F. App'x at 154; Gordon, 961 F.2d at 429–30.  Defendant received notice sufficient to meet the requirements of Rule 32.1 and due process.  The Petition listed defendant's three positive tests for marijuana use and referenced defendant's arrest on the same date that the Petition was filed, following execution of a search warrant at his residence. (ECF No. 98.)  More than two weeks before the final revocation hearing, defendant received a copy of the Search Warrant, which summarized the marijuana evidence confiscated during the trash pull, and reflected law enforcement's belief, at that time, that defendant was engaged in the use and trafficking of marijuana. (ECF No. 105.)  Defendant received a copy of the Police Report one day before receiving the Search Warrant. (ECF No. 103.)  The Police Report stated that during execution of the Search Warrant a partially smoked marijuana cigarette and a duffle bag containing heat seal bags with marijuana residue were found in the living room, where defendant was residing.  The Police Report also stated that heroin, marijuana, drug trafficking paraphernalia, and cellular telephones were found in other places throughout the residence.  Defendant was in possession of documentation evidencing that these items were

seized from his residence during the November 6, 2014 search no later than January 22, 2015. (ECF No. 103.)

The documents notified defendant that he was being accused of violating the conditions of his supervised release by a) testing positive on three occasions for marijuana, and b) being arrested following the execution of a search warrant at his residence on November 6, 2014 during which drugs and drug trafficking paraphernalia were seized. Defendant was provided ample information and opportunity to understand what he was being accused of and to prepare a defense to allegations that he was responsible for any and all of the items recovered during the search of the residence that he shared with his cousin and her minor child. The record reflects that defendant, in fact, did defend against the allegations related to the marijuana confiscated during the November 6, 2014 search. Defendant cross-examined Detective Churilla with respect to the marijuana evidence at the final supervised release violation hearing. (ECF No. 120 at 44-47, 50.) At that time, defendant did not inform the court that he was unprepared or unable to conduct an effective cross-examination about this evidence due to a lack of notice. There was no indication perceptible to the court that the pro se defendant was unfairly surprised, prejudiced, or impeded in his cross-examination on this issue for any reason, including lack of notice.

Under these factual circumstances, it could not have been clear error for this court to impose a revocation sentence based upon defendant's Grade A violation for possessing marijuana with the intent to distribute due to an alleged lack of notice. Defendant raised no objection or concern prior to or at his final revocation hearing about the lack of notice with respect to marijuana trafficking. The record does not support a finding that defendant was unaware that the marijuana evidence could form the basis of a violation, and was, therefore,

unfairly surprised and prejudiced at the final supervised release violation hearing and unable to cross-examine Detective Churilla about the circumstances surrounding the seizure of marijuana at his residence on November 6, 2014. Defendant was informed of the misconduct he was being accused of, had ample information to prepare his defense, and in fact presented a defense. Notice was, therefore, sufficient. Bullock, 576 F. App'x at 122; Jackson, 510 F. App'x at 154; Gordon, 961 F.2d at 429–30.

Defendant provides no legal authority for his conclusory, and somewhat implied, argument that this court must assess the sufficiency of written notice under Rule 32.1 by looking only to the content of the Petition. (ECF No. 114 ¶5.) The court was unable to independently locate any controlling legal authority for that proposition. One district court recently faced with a due process challenge to the sufficiency of notice of a probation violation in state court proceedings noted, by analogy, that "the Supreme Court has never held that the only constitutionally sufficient means of providing the notice required by the Sixth and Fourteenth Amendments is through the charging document" and that "federal courts considering the issue have held that the due process notice requirement may be satisfied even if the indictment or information was deficient so long as the defendant received actual notice of the charges against him." Jenkins v. Morgan, 28 F.Supp.3d 270, 277 (D. Del. 2014) (citing Hartman v. Lee, 283 F.3d 190, 195 (4th Cir. 2002)). In this case, there can be no real dispute that the Search Warrant and Police Report provide actual notice to defendant about his alleged marijuana trafficking.

Even if it were true that this court could not consider the actual notice received by defendant in this case through, at least, receipt of the Search Warrant and Police Report, the court would nevertheless conclude that defendant received adequate written notice. Although

the Petition specifically referenced the Pittsburgh Police Department's confiscation of heroin during the search of defendant's residence, and its intent to charge defendant with possession of heroin with the intent to deliver, it also noted that additional charges would be forthcoming, and that defendant had not yet been processed at the Allegheny County Jail. The Petition unambiguously notified defendant that he was facing revocation in federal court as a result of the search of his residence and his arrest on November 6, 2014. Defendant was on the first floor of the residence while the November 6, 2014 search occurred. After the contraband was seized, defendant told Detective Churilla that "everything" or "all the sh*t" was his. Although defendant ultimately refused to make a formal statement to that effect, under these circumstances, the Petition, even if viewed in isolation, provided defendant the necessary notice. The Petition notified defendant that he should prepare to defend against the government's claim that he committed another crime as a result of the November 6, 2014 search of his residence, and his arrest on that same day, which events involved the seizure of marijuana, heroin, and drug trafficking paraphernalia.

Defendant's argument, raised for the first time orally at the hearing on this motion, that the marijuana evidence could not form the basis of a supervised release violation hearing because he was never charged in state court with possession of marijuana with the intent to deliver is inapposite. When a defendant is accused of violating the standard condition of supervised release that he not commit another Federal, state, or local crime, the court considers the defendant's actual conduct, not what criminal charges were, or could be, filed as a result of that conduct. U.S.S.G. § 7B1.1, cmt. n.1. There is no requirement of conviction, or even indictment, and supervised release can be revoked "even without charges being filed." United States v. Carter, 730 F.3d 187, 192 (3d Cir. 2013). The fact that defendant was never charged in

state court with possession of marijuana with the intent to deliver is irrelevant under this authority. There is no factual dispute that defendant's actual conduct included the Pittsburgh Police Department's recovery of three heat seal bags with marijuana residue and a marijuana blunt from an area in which defendant admittedly lived within the shared residence. Detective Churilla testified at the final supervised release violation hearing that defendant volunteered to him after the search was completed that the contraband seized during the search belonged to him. It was proper for the court to consider this evidence without regard to what charges were actually filed against defendant in state court as a result of his November 6, 2014 arrest.

Although defendant need not be informed of the grade violation that the court could assign to his conduct, in this case, defendant was notified prior to the final supervised release violation hearing that his conduct was a Grade A violation. (ECF Nos. 108-09.)[1] Under the circumstances of this case, that notice amounted to an accusation that defendant possessed a controlled substance with the intent to distribute it. U.S.S.G. §§ 4B1.2(b), 7B1.1(a)(1). Defendant received this notice prior to the revocation hearing, and prior to asking this court for permission to appear pro se at that hearing. Defendant, however, did not ask for clarification

---

[1] Although this issue is not raised by either party, the court notes that defendant's three positive drug tests for marijuana in the span of three months, combined with his admission that he was using marijuana and the recovery of a marijuana blunt from an ashtray in the living room where defendant resided are ample evidence that defendant possessed a controlled substance in violation of 21 U.S.C. § 841. Bullock, 576 F. App'x at 122; Seiber, 516 F. App'x at 211-12; Jackson, 510 F. App'x at 151-52; Bungar, 478 F.3d at 544; Blackston, 940 F.2d at 886. Because the Petition notified defendant that his misconduct included testing positive for marijuana, defendant received adequate notice that he could be found to have possessed that substance. Bullock, 576 F. App'x at 122; Littlejohn, 508 F. App'x at 127; Bungar, 478 F.3d at 542. With defendant's numerous prior drug convictions, even simple possession would have been punishable by a term of imprisonment exceeding one year, making this conduct a Grade B violation. 21 U.S.C. § 844(a); U.S.S.G. § 7B1.1(a)(2). Revocation would have been mandatory under the circumstances pursuant to 18 U.S.C. § 3583(g)(1) and U.S.S.G. § 7B1.4 cmt. n.5. At defendant's criminal history category of V, the recommended guidelines sentence upon revocation would have been 18 to 24 months imprisonment for even that Grade B violation. U.S.S.G. § 7B1.4.

with respect to whether he was being accused of distributing heroin or marijuana, or both, and did not move for a continuance so that he could investigate the matter, or seek such clarification from the probation officer or the government. Defendant's conduct, again, belies any finding that he was the victim of unfair surprise or prejudice.

## IV.    <u>Conclusion</u>

Defendant is unable to establish that this court committed clear error by sentencing him to a 24-month term of imprisonment for a Grade A violation of the terms and conditions of his supervised release. Defendant received the notice afforded to him by applicable law, and cannot demonstrate that he was unfairly surprised or prejudiced by the government's assertion that he possessed with the intent to distribute both heroin and marijuana. Under the circumstances, defendant's motion will be denied.

An appropriate order will be entered contemporaneously with this opinion.


Dated: April 13, 2015                                    BY THE COURT,

                                                                    <u>/s/ *Joy Flowers Conti*</u>
                                                                    Joy Flowers Conti
                                                                    Chief United States District Judge